IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL WILEY, | ) | |
| | ) | Civil Action No. 09 - 156J |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| BUREAU OF PRISONS, | ) | |
| | ) | |
| Respondent. | ) | |

# MEMORANDUM OPINION AND ORDER[1]

Petitioner, Carl Wiley, a federal prisoner incarcerated at the Federal Correctional Institution at Loretto, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner contends that he is in custody in violation of the federal sentencing statutes because the federal Bureau of Prisons (BOP) calculated his sentences incorrectly. For the reasons set forth below, the Petition will be denied.

## A. Relevant Factual and Procedural History

On August 10, 1998, Petitioner was arrested by federal authorities and charged with Conspiracy to Defraud the United States and Bank Fraud in the United States District Court for the Southern District of Ohio. See United States v. Wiley, et al., Criminal Case No. 98-CR-0049 (S.D. Ohio). Following his guilty plea, on May 26, 1999, he was sentenced to a 64 month term of

---

1. In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

imprisonment. Petitioner commenced service of the federal sentence in Criminal Case No. 98-CR-49 (S.D. Ohio) on December 21, 1999, upon his release from a state sentence.

On May 5, 2004, while serving his 98-CR-49 (S.D. Ohio) sentence in a Residential Re-Entry Center (RRC) in Cincinnati, Ohio, a criminal indictment was filed against Petitioner in the United States District Court for the Eastern District of Arkansas for Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371. *See* United States v. Wimbley, et al., Criminal Case No. 4:04-CR-00117 (E.D. Ark.). He escaped from federal custody on May 23, 2004 and was arrested by Oklahoma state authorities in Oklahoma City on September 30, 2005 and has remained in custody since that time.

On February 7, 2006, the 64-month federal sentence imposed in Criminal Case No. 98-CR-49 (S.D. Ohio) expired. After pleading guilty in the United States District Court for the Eastern District of Arkansas, Petitioner was sentenced to sixty (60) months imprisonment on September 26, 2006. On November 16, 2006, Petitioner was designated to FCI Loretto for service of the federal sentence imposed in Criminal Case No. 4:04-CR-00117 (E.D. Ark.). On December 6, 2007, the Court of Appeals for the Eighth Circuit vacated the 60 month sentence imposed by the United States District Court for the Eastern District of Arkansas and remanded the case for re-sentencing. See United States v. Wiley, No. 06-3534 (8th Cir. December 6, 2007).

On February 20, 2008, Petitioner pleaded guilty in the United States District Court for the Southern District of Ohio to Escape from Federal Custody, in violation of 18 U.S.C. § 751(a). *See* United States v. Carl Edward Wiley, Criminal Case No. 1:07-CR-154 (S.D. Ohio). On June 3, 2008, Petitioner was sentenced to a 60 month term of imprisonment for Escape from Federal Custody. The

court directed its sentence run concurrently with any sentence imposed by the United States District Court, Eastern District of Arkansas, Criminal Case No. 4:04CR0117(04GH).

On September 26, 2008, Petitioner was re-sentenced in Criminal Case No. 4:04-CR-00117 (E.D. Ark.) to thirty-three (33) months imprisonment. The court directed the federal sentence to run concurrently with the federal sentence imposed by the United States District Court for the Southern District of Ohio at Criminal Case No. 07-1541:07CR154 (S.D. Ohio).

Subsequently, BOP calculated that Petitioner's full federal term would expire on June 3, 2013. His projected release date, which takes into account sentencing credit and good time credit, is calculated to be December 6, 2011.

### B. Federal Sentence Calculation

The Attorney General is vested with authority to make sentencing credit determinations as set forth in 18 U.S.C. § 3585. *See* United States v. Wilson, 503 U.S. 329, 333 (1992); United States v. Ifeoluwa, 238 Fed. App'x 895, 900 (3d Cir. 2007) ("[t]he power to grant sentencing credit under §3585(b) is vested with the Attorney General of the United States."). The Attorney General, under 28 C.F.R. § 0.96, delegated this authority to the BOP. United States v. Brann, 990 F.2d 98, 103-104 (3d Cir. 1993).

The interpretation of a statute by the agency charged with administering it is entitled to some deference, so long as its interpretation is not clearly erroneous or contrary to law or the constitution. Reno v. Koray, 515 U.S. 50, 60 (1995). Thus, the standard of review of the BOP's actions in crediting Petitioner's federal sentences is limited to determining whether the BOP abused its discretion. Espinoza v. Sabol, 558 F.3d 83, (1st Cir. 2009) ("Most circuits consider that the district court's review of a BOP decision about credits is for abuse of discretion."). Moreover, the BOP is

3

presumed to follow the law and so it is Petitioner's burden to show otherwise in this Section 2241 petition and to show that the BOP abused its discretion in calculating Petitioner's sentences. *See, e.g.*, Garner v. Jones, 529 U.S. 244, 256 (2000) ("we presume the Board [of Pardons and Paroles of Georgia] follows its statutory commands and internal policies in fulfilling its obligations."); United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980) ("the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly."); Eccleston v. U.S., Civ. A. No. 09-2654, 2010 WL 445662, at *5 (D.N.J. Feb. 3, 2010) ("Petitioner has not established any abuse of discretion in the BOP's consideration of his request" for sentencing credits).

A federal prisoner's sentence calculation is governed by 18 U.S.C. § 3585, Calculation of a term of imprisonment. Paragraph (a) of the statute governs the date upon which a prisoner's sentence commences, and paragraph (b) governs credit he receives for time he spent in official detention prior to the date his sentence commenced. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual (PS 5880.28).[2] Thus, in any computation of a federal sentence, two separate decisions must be made: (1) when the federal sentence commences and (2) to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), *aff'd*, 100 F.3d 946 (3d Cir. 1996). *See also* Dutton v. U.S. Attorney General, __ F.Supp.2d __, __, 2010 WL 2000370, at *3 (W.D.N.Y., May 20, 2010).

1. <u>Commencement of a Federal Sentence</u>

---

2. BOP programs statements are available in full on its website, www.bop.gov.

The date upon which a federal sentence commences is controlled by 18 U.S.C. § 3585(a), which provides as follows:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP has interpreted § 3585(a) such that it will not commence a federal sentence earlier than the date on which it was imposed. *See* PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). *See also* Rashid v. Quintana, 372 Fed. App'x 260, 262 (3d Cir. 2010) ("A federal sentence commences when the defendant is received by the Attorney General for service of his federal sentence. *See* 18 U.S.C. § 3585(a). *See also* United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir. 1990). As a result, a federal sentence cannot begin to run earlier than on the date on which it is imposed."); DeMartino v. Thompson, Civil No. 96-6322, 1997 WL 362260 at *2 (10th Cir. July 1, 1997) ("Logically, a [federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). Thus, a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served. Rashid, 372 Fed. App'x at 2, n.7; Peterson v. Marberry, Docket Civil No. 07-56, 2009 WL 55913 at *3-5 (W.D. Pa. Jan.5, 2009) (citing PS 5880.28, Chapt. 1, Pages 12-13, and explaining in detail BOP policies regarding § 3585(a)).

A threshold issue in determining the commencement date of a Federal sentence is whether the defendant was in primary Federal or primary non-Federal custody at the time the Federal

sentence was imposed. If the defendant was in primary Federal custody, the Federal sentence will commence upon imposition. 18 U.S.C. § 3585(a). If, however, the defendant was in primary State or other non-Federal custody at the time the Federal sentence was imposed, the BOP must determine whether the Federal sentencing court expressly indicated its intent as to whether the federal sentence run concurrently with, or consecutively to, the non-Federal sentence. 18 U.S.C. § 3584(a). If the Federal court expressly indicated an intention to have its sentence run concurrently with the non-Federal sentence, the Bureau of Prisons will designate the State correctional facility as the place for the defendant to serve his Federal sentence. In such cases, the Federal sentence will be deemed to commence upon imposition. *See* 18 U.S.C. §§ 3585(a), 3621(b). However, if the Federal sentencing court was silent as to whether it intended its sentence to run concurrently, the court's silence will be construed as an intent to impose a consecutive sentence. 18 U.S.C. § 3584(a). In such cases, the Federal sentence will commence only when primary non-Federal custody over the defendant is relinquished. 18 U.S.C. § 3585(a).

In this case, Petitioner's sentences were calculated as follows. Petitioner first served a 64 month sentence imposed on May 26, 1999 by the United States District Court for the Southern District of Ohio in Criminal Case Number 98-CR-48 (S.D. Ohio). This 64-month sentence commenced upon his release on parole from Ohio state authorities on December 21, 1999 to a federal sentencing detainer. He was incarcerated serving the 64 month sentence from December 21, 1999 through May 23, 2004, the date he escaped from custody. He was on escape status for 494 days, from May 24, 2004, through September 29, 2005. He was returned to custody on September 30, 2005 and he served the remainder of his 64-month sentence until its expiration on February 7,

2006. Although his 64-month sentence had expired, Petitioner remained in custody for processing of federal criminal charges in the Eastern District of Arkansas and the Southern District of Ohio.

The United States District Court for the Eastern District of Arkansas imposed a 60-month sentence on Petitioner on September 26, 2006. This sentence was recalculated to thirty-three (33) months imprisonment. The BOP determined that this sentence commenced on September 26, 2006. This sentence expired on June 25, 2009, thirty-three months after September 26, 2006. The United States District Court for the Southern District of Ohio imposed a 60-month sentence for the escape charge on June 3, 2008. The BOP determined that this sentence commenced on June 3, 2008. Absent any sentencing credit, this 60-month sentence has a maximum expiration date of June 3, 2013.

Petitioner seeks to have the BOP adjust his federal sentence computation so that his two federal sentences could be deemed to commence on the same date, *i.e.*, September 26, 2006. He posits that by imposing concurrent sentences, the sentencing courts in the Eastern District of Arkansas and the Southern District of Ohio intended this result. As Respondent points out, however, "concurrent" under § 3584(a) means that the new sentence starts to run with the **remaining** portion of the pre-existing undischarged sentence. *See* Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983) ("a federal sentence made concurrent with a sentence already being served does not operate in a 'fully concurrent' manner. Rather, the second sentence runs together with the remainder of the one then being served.") (emphasis in the original). A federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served. Mills v. Quintana, Civil No. 08-339 Erie, 2010 WL 2636073, 4 (W.D. Pa. June 28, 2010). Thus, a concurrent sentence commences on the date of its imposition, and not on the date of commencement

7

of the prior undischarged sentence or some earlier date. Accordingly, Petitioner's 60-month Ohio sentence began to run on June 3, 2008 and ran currently with the Arkansas 33-month sentence for the remainder of that sentence, *i.e.*, until June 25, 2009.

Petitioner argues that the District Court in the Southern District of Ohio intended to adjust its federal sentence to account for all time served in connection with the sentence imposed by the district court in the Eastern District of Arkansas from September 26, 2006 through June 3, 2008. In making this claim, he relies on the opinion by the Court of Appeals for the Third Circuit in Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002). In Ruggiano, the Court held that in imposing a sentence, a district court may grant an adjustment for time served on a preexisting sentence pursuant to United States Sentencing Guidelines (U.S.S.G.) § 5G1.3(c) by making the federal sentence concurrent with the state sentence for the full period of the preexisting sentence (retroactively concurrent) or only concurrent for the remainder of the preexisting sentence from the date when the federal sentence was imposed.[3] In Ruggiano, the sentencing judge stated "that he thought it appropriate to go ahead and recommend that [Ruggiano's sentence] be served concurrently and that he receive credit for the amount of time that he served there." *Id.*, 307 F.3d at 124. "Then,

---

3. U.S.S.G. section 5G1.3 is entitled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment," and is intended to aid the Court in determining an appropriate term of imprisonment when a defendant is also subject to an undischarged term of imprisonment. This guideline provides in relevant part as follows.

> (c) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(c)

in his written judgment, [the sentencing judge] recited that Ruggiano's sentence was to 'run concurrent with State sentence. Defendant to receive credit for time served.' " *Id*. The Third Circuit found that this language conveyed an intent of the sentencing judge to grant an adjustment by making the federal sentence retroactively concurrent for the entire period of the state sentence pursuant to § 5G1.3(c). In making this determination, the Court noted that imposing a concurrent sentence retroactively to coincide with time served on a pre-existing sentence is properly termed an "adjustment," and not a "credit" or "downward departure." *Id*. at 133.

In 2003, an amendment to the 5G1.3 Application Notes provided that subsection (c) does not authorize a sentencing court to make an adjustment for time served on a prior undischarged term of imprisonment and that a sentencing court may consider a downward departure only in extraordinary cases.

> (E) Downward Departure.--Unlike subsection (b), subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment. However, in an extraordinary case involving an undischarged term of imprisonment under subsection (c), it may be appropriate for the court to downwardly depart. This may occur, for example, in a case in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings. Nevertheless, it is intended that a departure pursuant to this application note result in a sentence that ensures a reasonable incremental punishment for the instant offense of conviction.
>
> To avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. 3585(b) to grant credit for time served under certain circumstances, the Commission recommends that any downward departure under this application note be clearly stated on

> the Judgment in a Criminal Case Order as a downward departure
> pursuant to § 5G1.3(c), rather than as a credit for time served.

U.S. Sentencing Guidelines Manual § 5G1.3 app. note 3(E). This amendment became effective November 1, 2003, before Petitioner was sentenced on either the Arkansas or Ohio escape federal convictions.[4]

The Historical Notes to the Sentencing Guidelines reveal that Application Note (3)(E) was proposed to address a conflict among the various Courts of Appeals regarding the authority of sentencing courts to grant credit or adjust a sentence for time served on a prior undischarged term of imprisonment under § 5G1.3(c). The Historical Note explained that the 2003 amendment made clear that courts may not adjust or give "credit" for time served on an undischarged term of imprisonment under 5G1.3(c). Instead, courts may downwardly depart in extraordinary cases in extraordinary circumstances in order to achieve reasonable punishment for the instant offense.

Thus, in order to apply § 5G1.3 to the instant action, the judgments in Petitioner's criminal case orders must clearly provide for a downward departure pursuant to § 5G1.3(c) rather than a credit for time served. However, these judgments fail to show that by imposing concurrent sentences the federal sentencing courts also were intending to downwardly depart from the applicable sentencing guideline range under § 5G1.3. Thus, Petitioner's reliance on Ruggiano affords him no basis for federal habeas relief. Consequently, as stated above, his 33-month Arkansas sentence commenced (began to run) on September 26, 2006 and his 60-month Ohio sentence commenced on June 3, 2008, not on September 26, 2006.

---

4. In several subsequent opinions, the Court of Appeals for the Third Circuit has held that Ruggiano has been abrogated by the 2003 Amendment to Application Note 3(E). *See, e.g.*, Escribano v. Schultz, 330 Fed. App'x 21, 23 (3d Cir. 2009); United States v. Destio, 153 Fed. App'x 888 (3d Cir. 2005).

2. Prior Custody Credit

The second calculation in arriving at Petitioner's projected release date is whether he is entitled to any prior custody credit. Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides as follows.

> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> That has not been credited against another sentence.

18 U.S.C. § 3585(b). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007); Chambers, 920 F.Supp. at 623 ("Section 3585 does not permit credit on a federal sentence for time served and credited against another sentence.").

Here, under U.S.C. § 3585(b), Petitioner received 230 days prior custody credit for time served in official detention between February 8, 2006 (the day after he satisfied the 64-month sentence imposed in Criminal Case No. CR-2-98-49(1) (S.D. Ohio)) through September 25, 2006 (the day before the Arkansas sentence commenced). Petitioner served the concurrent phase of his sentences from September 26, 2006 through June 25, 2009, the date his 33-month sentence would

have expired absent any other federal sentence. However, as discussed below, he still had the remainder of his 60-month Ohio sentence to serve. Using his June 3, 2013 maximum expiration date for the 60-month Ohio sentence, and crediting him with 230 days prior custody credit, leaves a projected release date of October 15, 2012. Pursuant to 18 U.S.C. § 3624(b), Petitioner may receive up to 314 days good conduct time. Assuming he receives all good conduct time available to him under § 3624(b), his projected release date would be December 6, 2011 (*i.e.*, subtract 314 days from October 15, 2012).

In the instant case, BOP was required to aggregate his multiple federal sentences under 18 U.S.C. § 3584(c), which requires that multiple terms of imprisonment ordered to run consecutively or concurrently be treated as single, aggregate terms of imprisonment. In order to aggregate multiple terms of imprisonment, each sentence to be included in the aggregation must be considered. On November 13, 2008, Petitioner's federal sentences were computed by the BOP. The procedure for aggregating federal sentences is set forth in BOP Program Statement 5880.28. When calculating aggregate concurrent sentences, the BOP first must determine the commencement date and the length of the aggregated term. The commencement dates and sentence length of the aggregated term are determined by computing the effective full term dates (EFT) of each sentence. The EFT of the 33 month sentence imposed on September 26, 2006 in Criminal Case No. 4:04-CR-00117 (E.D. Ark.) was determined to be June 25, 2009 (*i.e.*, September 26, 2006 plus 33 months equals June 25, 2009). The EFT for the 60-month sentence imposed on June 3, 2008 in Criminal Case No. 07- 154 (S.D. Ohio) is June 2, 2013 (*i.e.*, June 3, 2008, plus 60 months equals June 2, 2013).

Next, the "overlap" period was identified by subtracting the EFT of sentence 1 (June 25, 2009) from the EFT of sentence 2 (June 2, 2013), resulting in an overlap period of three years, eleven

12

months and eight days (or 47 months and eight days), spanning June 25, 2009 through June 2, 2013. The length of the aggregated sentence was determined by adding the length of sentence 1 (33 months) to the overlap period (47 months and eight days). Thus, Petitioner's aggregated sentence length was determined to be six years, eight months and eight days (or 80 months and eight days). The resulting EFT of the aggregated sentence is June 2, 2013, which was determined by commencing the aggregated term on September 26, 2006, and running it continuously for 80 months and eight days.

After the EFT of the aggregated sentence was determined, prior custody credit and good conduct time were computed into the aggregated sentence. Pursuant to 18 U.S.C. § 3585(b), the Petitioner received 230 days prior custody credit for time served in official detention between February 8, 2006 (the day after he satisfied the 64 month sentence imposed in Criminal Case No. CR-2-98-49(1) (S.D. Ohio)) through September 25, 2006 (the day before the aggregated sentence commenced). This results in a revised EFT of October 15, 2012 (*i.e.*, June 3, 2013 minus 230 days equals October 15, 2012). Pursuant to 18 U.S.C. § 3624(b), the Petitioner may receive up to 314 days good conduct time. Assuming he receives all good conduct time available to him under § 3624(b), Petitioner's projected release date is December 6, 2011 (*i.e.*, October 15, 2012 minus 314 days equals December 6, 2011).[5]

For the foregoing reasons, Petitioner has not demonstrated that he is entitled to habeas corpus relief. An appropriate Order follows.

---

5. This is the same result the Court reached above utilizing the applicable statutory framework without specifically aggregating the sentences. The Court made these determinations as an aid to Petitioner in understanding how his multiple sentences run under the applicable statute.

**ORDER**

**AND NOW**, this 10th day of September, 2010;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

                                        Lisa Pupo Lenihan
                                        United States Magistrate Judge

cc:    Carl Wiley
        64537-061
        F.C.I. Loretto
        Inmate/Mail Parcels
        P.O. Box 1000
        Loretto, PA  15940